JENNINGS *v.* FORT SMITH DISTRICT OF SEBASTIAN COUNTY.

Opinion delivered October 26, 1914.

1. COURTHOUSE ERECTION—POWER OF COUNTY COURT.—A county court has no authority to order the erection of a county courthouse upon land which does not belong to the county.

2. PUBLIC BUILDING—ERECTION—CONTRACTS OF COMMISSIONER—VALIDITY.—Where a county court ordered that proceedings be instituted to determine the right of the county to erect a courthouse on a certain piece of property, the county commissioner can not make any valid contract looking to the erection of a courthouse, until the title to the site upon which it is proposed to build, is determined by a court of competent jurisdiction, to be in the county.

3. PUBLIC BUILDINGS—ERECTION—OWNERSHIP OF LAND—NOTICE.—A person entering into a contract with the county commissioner looking

to the erection of a courthouse, does so with notice of Kirby's Digest, § § 1014-1016 prescribing that the county court can only erect a courthouse upon lands belonging to the county, and such person is bound to take notice of the fact that neither the county nor its commissioner may enter into a contract to erect a courthouse upon land other than that belonging to it.

4. PUBLIC BUILDINGS—ERECTION—CONTRACT WITH ARCHITECT.—An architect with knowledge of the pendency of an action to try the title to certain land upon which the county proposed to erect a courthouse, can not, in good faith enter into a contract with the commissioner of the county to prepare plans and specifications for such courthouse, until the termination of the suit to determine the title, and such contract is therefore void.

5. COUNTY COURTS—JURISDICTION—CONSTITUTIONAL LIMITATIONS.—Under the Constitution the county courts are created and given jurisdiction for special purposes, and can only exercise such powers as are expressly conferred upon them by the Constitution and statutes, or those that arise by necessary implication from the powers expressly granted.

6. APPEAL AND ERROR—FINAL ORDER.—Where a county court made an order allowing appellant $1,200, and at a succeeding term required appellant to verify his whole claim against the county, and allowing him a greater sum, and where appellant acquiesced in the last order, he can not assert that the order allowing him $1,200 was final.

Appeal from Sebastian Circuit Court, Greenwood District; *Daniel Hon,* Judge; affirmed.

### STATEMENT BY THE COURT.

On the 6th day of July, 1912, the county court of Sebastian County entered an order directing that a new courthouse be erected upon certain portions of block 515, which particular portion of the block was described by metes and bounds. The order directing the courthouse to be erected also contains this recital: "It further appearing to the court that the city of Fort Smith disputes the right of the said Fort Smith District to erect a courthouse upon said premises, it is ordered that proper proceeding be forthwith instituted by said district against the said city of Fort Smith in the proper courts for the purpose of determining the rights of the said district to erect the courthouse upon said premises, hereinbefore·

specifically described, or upon such other part of said block as said court may adjudge, and to quiet the title of the said Fort Smith District thereto.''

The order further directed that the courthouse commissioners ''hereinafter named proceed to prepare and submit to the court the plans and specifications for the erection of said building upon the above described grounds, or upon such portion of said block as it may be hereafter determined the said district has a right to build upon.''

In the same order the appellant was named as one of the commissioners. The appellant resigned as commissioner and the court thereupon entered an order discharging him and appointing Chas. J. Jewett as sole commissioner. Soon after his resignation appellant was employed by Jewett, with the consent and approval of the then county judge, as architect for the proposed building, and as such he entered into a contract with the commissioner to provide plans and specifications and to superintend the construction of a new courthouse. Under his contract he was to be paid 3 per cent. for the plans and specifications when the contract was let and 2 per cent. for superintending the construction of the building, to be paid from time to time during the progress of the work. In pursuance of this employment he prepared plans and specifications which were filed in the county court July 29, 1912, and which were on that day accepted by the commissioner and approved by the county court. The appellant testified that he had performed the work in good faith and had not been paid for the same; that the amount due him for preparing the plans and specifications, as agreed upon between himself and the commissioner and the county court, was $5,820.

On the contract which the commissioner entered into with appellant was this endorsement: ''It is agreed that Chas. J. Jewett assumes no personal liability by signing this contract, but signs it for the district only.''

The commissioner did not institute proceedings for the purpose of determining the rights of the said district to erect a courthouse upon the premises described or upon such other part of said block as said court may adjudge," as was directed by the order of the court; but afterwards the city of Fort Smith instituted a suit in the chancery court against the county judge and Jewett, as courthouse commissioner, in which it was determined and decreed, in part, as follows: "In any event the county has no estate in the northeast corner of the block named and to begin the erection of the courthouse there would not only be a misapplication of the public funds, which is not within the powers of the county judge or county court, and vulnerable at the suit of a taxpayer, but further, it would be a damage to the rights of the said city which could not be compensated, and as for which the city has no adequate remedy at law."

It was further decreed that the court had "no power to locate a public building upon the northeast corner of the square or block of ground named and because to attempt to do so would be an unlawful waste of public money." And the court entered an order permanently enjoining and restraining the defendants, the county court and commissioner, "from entering upon said ground for the purposes named, and from contracting with any persons, partnership or corporation, or otherwise, for the construction or erection of a public building upon the northeast corner of said block, or upon any other unoccupied portion of said block."

After this order restraining the county court and the commissioner was entered, the commissioner, on the next day, the 8th of August, awarded the contract for constructing the courthouse, not on the site directed by the order of the court, but on the site occupied by the present courthouse building; and on the 14th day of August the county court entered an order directing the commission to erect the courthouse on the site of the present building instead of on the northeast corner as designated in its former order, reciting that the chan-

cery court had held that the district had no right to build upon the ground, but was the owner of the site of the present building. This order of August 14 also directed that the courthouse be erected in accordance with the plans and specifications already approved (which were those prepared by appellant).

On the 27th of August suit was instituted by the city of Fort Smith against the county judge, the commissioner and the construction company to whom the contract had been let for building the courthouse, to enjoin them from tearing down the old courthouse and from the erection of the new courthouse on the site of the old, alleging that the city was the owner of the block. The defendants filed demurrer and answer, denying the allegations of the complaint, and made their answer a cross complaint, and asked that title be quieted in the Fort Smith District, etc., and that the city be enjoined from interfering with the possession or control thereof. A final decree was rendered October 21, 1912, by the chancery court, perpetually enjoining the district from constructing a courthouse on the present site and from tearing down the old courthouse. The county court directed an appeal to be taken to the Supreme Court from this decree, which was done.

After the term of office of the county judge who had entered an order directing the erection of a courthouse had expired, his successor, on January 10, 1913, entered an order directing that the appeals which had been taken by the district be dismissed. The appeals to the Supreme Court were, in accordance with such order, dismissed.

The appellant was not a party to any of the proceedings in the above cases.

On August 30, 1912, being a day of the July term of the county court, the court made an order allowing appellant $1,200 for his services rendered under his contract for preparing plans and specifications for the courthouse. At the October term, 1912, an order was entered reciting that appellant had furnished plans and specifi-

cations for a courthouse for the Fort Smith District, which contract had been approved by the court, and under which the sum of $5,820 was due appellant for the plans and specifications, upon which $1,200 had been allowed him, and allowed the balance of the money due, $4,620, which, with the $1,200 allowed him at the July term, made the total amount due appellant at that time on his contract. On October 30, the court set aside the order allowing $1,200 to appellant at the July term and and the order allowing $4,620 at a former day of the October term, and an order was entered allowing him $5,820, the amount due him under his contract, and warrants were ordered to be issued for said sum payable out of the general county fund. The county court on that day adjourned to the next day, and a new judge having qualified to succeed the judge who had made the order allowing the appellant $5,820 on the day before, this incoming judge, on the motion of a tax-payer, made an order setting aside the order of the judge made the day before allowing appellant's claim and disallowing the same. From this order the appellant prosecuted his appeal to the circuit court.

The appellant asked the trial judge to make certain findings of fact, to the effect that he was not a party to the proceedings to enjoin the county judge and the commissioner, and to have the title of the district quieted, and was therefore not bound by any of the proceedings in those cases, and to the effect that if the evidence showed that the appellant made the contract with the commissioner as claimed by him, which contract was approved by the county court, and the plans and specifications accepted, that this was a binding agreement upon the Fort Smith District, and that appellant was entitled to pay for his services according to the terms of the agreement.

The court refused to find as requested, and at the request of appellee, made the following declarations of law:

"1.   The order of the county court appointing the commissioner put all parties who contracted with him upon notice of his limitations with reference to the ability of the county judge to erect a courthouse upon block 515 and if by reason of statutory or organic law, the county judge did not have this power, all contracts made with him or his agents looking to the building of a courthouse upon this site, were void.

"2.   Any one who contracts with a municipal body or an agency of the people and taxpayers does so at their peril as far as the power exists in the said agent of the people to carry out his side of the contract.

"3.   The order appointing the commissioner directed him to bring an action to quiet the title to block 515, the proposed location of the proposed courthouse. The commissioner failed to perform his duty and claimant is bound to take notice of the powers of the commissioner and of his failure to perform his duty.   It was finally held in a court of competent jurisdiction that the title to the proposed site was not in the county.   Hence all contracts entered into looking toward the building of a courthouse on this site were void.

"4.   If the claimant had followed the law and required the commissioner to test his, the commissioner's powers, as directed in said order before performing the work for him, he could not have been hurt.   The claimant, Jennings, had at least constructive notice if not actual notice of the commissioner's duties and his failure to perform them, and the claimant went ahead and performed the work with the knowledge that there was a question as to the commissioner's powers which were decided by the court against the commissioner and against the right of the claimant, Jennings, to recover.

"5.   The contract between the plaintiff and the commissioner being without authority, the ratification of it by the county judge did not make of it a legal contract binding on the Fort Smith District of Sebastian County.

"6.   This is not a parallel case to a case where a county judge, from either his best judgment or a whim,

changes his mind and makes the performance of the contract impossible. In this case the contract is void because at no time did the county judge have the power to locate the courthouse on block 515, where the order to build the courthouse located the same.

"8.    The proceedings and judgment of the two cases of the city of Fort Smith against Harp *et al.,* fixed the right of the county judge to locate the building on block 515, and held that such a right did not exist. Hence, the claimant's contract with the commissioner was void from the beginning and the claimant had constructive, if not actual, notice of the limitations of the powers of the agent of the county judge, towit, the commissioner, from the date of the filing of the order appointing the commissioner. And a contract to build a courthouse on land where the county did not have authority to build, is void, and the approval of such contract by the court does not make it legal.

"9.    The decrees of the chancery court whether right or wrong are binding as long as they stand without reversal by the Supreme Court."

Appellant excepted to the rulings of the court in refusing to make the findings of fact requested by him, and excepted to the declarations of law announced by the court.

The circuit court entered a judgment affirming the action of the county court in disallowing appellant's claim, and appellant appeals from that judgment. Other facts stated in the opinion.

*Ira D. Oglesby,* for appellant.

*Pryor & Miles,* for appellee.

Laws creating liabilities against counties are to be strictly construed. They are not to be made liable beyond the strict letter of the law; and persons who contract with the county are bound to take knowledge of the limitations of the authority of the county judge, or any commissioner appointed by him.

It is a prerequisite to the validity of any contract for the erection of a county courthouse, that the county own in fee simple the ground upon which the courthouse is to be built. Kirby's Dig., § § 1014, 1015, 1016; 11 Cyc. 390; 35 Pac. 97; 24 N. E. 626; *Id.* 138; 60 Am. St. Rep. 518; 1 Dil., Mun. Corp., 450, § 237; 86 Pac. 1012; 3 N. E. 848; 95 S. W. 1032.

WOOD, J., (after stating the facts). 1. The appellant testified, in part, as follows: "He never saw the original order of the county court appointing Jewett and himself commissioners; his employment as architect was a short time after he declined to accept the position of commissioner and Jewett was appointed sole commissioner by the county court. Some time after his appointment there was common talk of litigation and controversy between the city and the county over the construction of a courthouse building on block 515. He was present as a spectator during the argument of these cases before the chancellor, but not being a lawyer he could not keep up with the proceedings, but was informed that as a result the chancery court enjoined the building of a courthouse in the corner of block 515, where it was at first contemplated to build. He never saw or read any of the pleadings in the case and got his information from the public press and common report."

While appellant was not a party to the proceedings to determine the title to the block and lot upon which the courthouse was to be erected, it appears from his own testimony that he was cognizant that proceedings had been instituted to test the title of the Fort Smith District to the lot upon which the courthouse was ordered to be erected.

(1) The county court, under our statute, had no authority to order the erection of a courthouse upon land that did not belong the the county of Sebastian. The statute provides that the court shall designate the place where to erect any county building on land belonging to the county at the established seat of justice. Kirby's Digest, § 1014. See also § § 1015 and 1016.

(2)   In the order appointing the commissioner the court directed that proceedings be forthwith instituted for the purpose of determining the rights of the district to erect the courthouse upon the part of the block designated or any other part of the block where it was proposed to erect the courthouse.   Under this order of the court the commissioner could not proceed to make any valid contract looking to the erection of the courthouse until the title to the site upon which it was proposed to build was determined by the court to be in the appellee. The record shows that the county court and its commissioner and the appellant all knew that the alleged title of the Fort Smith District to the land upon which it was proposed to build and the right to build thereon were in question.   Hence, the court included in its order directing the courthouse to be built an order directing suit to be instituted for the purpose of testing the title.   But, notwithstanding this knowledge, the court and its commissioner proceeded in an attempt to have the courthouse constructed.

(3-4)   The appellant was bound to take notice of the statute prescribing that the county could only erect a courthouse upon lands belonging to the county and he was bound to take notice of the fact that neither the county court nor its commissioner could enter into a contract to erect a courthouse upon any other land, and whether he was a party to the proceeding by which it was proposed to test the title or not, his own testimony shows that he had notice of such proceedings, and having notice, he could not in good faith enter into any contract with the commissioner to furnish plans and specifications for such building until it was first determined that the county had title to the site, and that therefore the county court and the commissioner had authority to enter into a contract for the erection of a courthouse upon such site.

(5)   It is well settled that the county court, under our Constitution, being created and given jurisdiction for special purposes, can only exercise such powers as

are expressly conferred upon it by the Constitution and statutes, or those that arise by necessary implication from the powers expressly granted. 11 Cyc. 390; *Wheeler* v. *Wayne County*, 24 N. E. 626; *State* v. *True*, 95 S. W. 1032, and other authorities cited in appellee's brief.

As we construe the decree and opinion of the chancery court, rendered on August 12, 1912, the court did not determine that the Fort Smith District had the title and the right to build upon the lot where the old courthouse was situated. The only question presented for determination, at least so far as indicated by the opinion and decree, was as to whether or not the Fort Smith District of Sebastian County had power to locate the proposed new courthouse upon the northeast corner of block No. 515. The question of whether it had the right to build upon the old site was not in issue, at least so far as is shown by the opinion and decree to which reference is made in the abstract, and was not passed upon. The court's order and decree only restrained the county court and its commissioner from contracting for the construction of the courthouse "upon the northeast corner of said block or upon any other unoccupied portion of said block." This was by no means a finding and decree that the county court and its commissioner had the right to contract for the erection of a courthouse upon the portion of the block that was occupied. And as evidence that this was not the issue passed upon by the chancery court, in a proceeding afterward instituted, when that issue was directly involved, the court entered a decree "perpetually enjoining the district from constructing a courthouse on the present site and from tearing down the old courthouse for that purpose." At the time, therefore, that the commissioner let the contract for the construction of the courthouse, and when the county court at a succeeding day entered an order directing the courthouse to be erected on the site of the present building instead of on the corner of block 515, it had not been determined by the chancery court that the title to the site was in the county of Sebastian. The judge of the

county court, the commissioner and the appellant had knowledge of this fact, and their contracts made with such knowledge were not entered into in good faith, and were therefore void.

It is unnecessary to go further. The evidence was sufficient to warrant a finding that the appellant, having notice that there was litigation pending involving the authority of the commissioner to make the contract with him, at the time he alleges that it was made, and that the commissioner would have no right to enter into such contract until it was settled by the courts that he had such authority, can not recover.

The court was, therefore, correct in declaring that the contract between the appellant and the commissioner, being without authority, did not make it a legal contract, binding on the Fort Smith District of Sebastian County.

(6)   The order of the county court allowing the appellant the sum of $1,200 for his services at the July term, 1912, was not treated by the court as a final order, for it appears that at a succeeding term the court, with appellant's acquiescence, required the appellant to verify his whole claim and then allowed the same in the sum of $5,820, which was the full sum that appellant claimed to be due him, including the $1,200. It was from the order of the county court setting aside this allowance of $5,820 that appellant appealed to the circuit court, and it is from the order of the circuit court affirming the decision of the county court that appellant prosecutes this appeal. Appellant acquiesced in the order setting aside the first order allowing him $1,200. Having consented to it then, he could not thereafter assert that the order allowing him $1,200 was final.

There was no error in the refusal of the court to enter judgment in favor of appellant for the sum of $1,200.

The judgment of the circuit court is in all things correct, and it is therefore affirmed.

McCULLOCH, C. J., (dissenting). The order of allowance of the sum of $1,200 to appellant made

by the county court on August 30, 1912, was a final judgment which passed beyond the control of the court with the expiration of the term. No appeal was taken from that judgment and the court had no power to set it aside at a later term. The fact that the claim was an unjust one and founded on no legal liability of the county afforded no ground for setting the judgment aside after the expiration of the term unless fraud was perpetrated in its procurement. Fraud which vitiates a judgment must be in procurement of a judgment, and not merely in the original cause of action. *Scott* v. *Penn,* 68 Ark. 492; *James* v. *Gibson,* 73 Ark. 440; *Boynton* v. *Ashabranner,* 75 Ark. 415; *Parker* v. *Bowman,* 83 Ark. 508; *Davis* v. *Rhea,* 90 Ark. 261.

Appellant did not consent to the order setting aside the judgment, nor can it be justly said that he acquiesced therein. He was never put in a position to complain of an adverse judgment of the court until October 30, 1912, when the judgments of allowance in his favor were set aside, and then he promptly appealed to the circuit court. I fail to perceive, therefore, how it can be said that he consented to the setting aside of his judgment, and I dissent from that part of the decision.